May it please the Court, Kenneth Carpenter appearing on behalf of my employer, Carpenter Chartered. Carpenter Chartered is the petitioner in this matter and I will begin with the issue of standing. Carpenter Chartered standing is established as both self-evident and as third-party standing. The concept of self-evident is, in the view of Carpenter Chartered, clear in this case because of the very nature of the practice that is maintained by Carpenter Chartered. Mr. Carpenter, I'm sorry, just for purposes of time, could you just go right to specific examples of why you have standing or why your firm has standing? Yes, Your Honor. If I can begin with a generality, I believe that each and every client that Carpenter Chartered represents is faced by the procedural problems that are presented by each of the rules that have been challenged in this case. That, in our view, is an important basis to understand that what the AMA did was to change the structural process and create a new set of procedures that all claimants are affected by. And each and every claimant that is represented by Carpenter Chartered is affected by the delays from these defective regulations which we are asking the court to invalidate. The specifics of each are addressed in our supplemental briefing and in our declarations. Mr. Carpenter, does it make a difference that Carpenter Chartered is a law firm representing legal interests as opposed to, let's say, some of these other national organizations we've been hearing this morning that represent the policy or the advocacy interests of their members? Well, in one respect, I believe that it does, Your Honor. And I believe that that difference is that each and every client of Carpenter Chartered who has a claim with the Department of Veterans Affairs is profoundly affected by these rules. And that that only enhances the standing of Carpenter Chartered because it is in the best possible position based upon its breadth of experience and length of experience in working within the VA system prior to these changes to understand the impact of those changes in law and the impact that these proposed regulations that are being challenged in this position have. So, Mr. Carpenter, originally you had said basically you should have standing because we should treat you as if you were NOVA or PVA or the So that's the same type of argument you're making now. And when you say self-evident, I think, aren't you trying to say that it's self-evident for you to have standing as an organization, organizational standing? Well, terminology matters here because of the way the cases come down and there's a concept of organizational standing. Yes, Your Honor. And in the context that a law firm is an organization that is organized for the purpose of representing The one thing you're not claiming is associational standing because you don't have any members, right? That's correct, Your Honor. Okay. Now, in terms of the argument you're making based on your firm, which I'll grant you is a firm of specialty, then your argument would go that any specialized firm that has decent range of clients would have standing to challenge any regulations of any agency that bore on their clientele. Correct? That would be correct, Your Honor. And it's especially important in this area. The generality that you just described, I think, is true, but it's even more enhanced in the context of the business that is done by the Department of Veterans Affairs. Mr. Carpenter, this is Judge Chen. Are you aware of a case in which a private law firm was able to establish standing through an organizational standing theory? Not directly, Your Honor. There have been a couple of cases that talk about why a law firm, in the one case in which it was rejected, the court reasoned that it was more in the hypothetical range than in the realistic range. Does that case have a name, Mr. Carpenter? It does, Your Honor, but I apologize. It's gone right out of my head. It wasn't cited in your brief? Yes, it is cited in our supplemental brief, Your Honor. Okay. I'm sorry, I just... If it's cited, I'll find it. Yes, it is cited, Your Honor. And as I recall, the basis for the rejection of the law firm having standing in that case was because the allegation or representation of standing was based upon a hypothetical or theoretical circumstance rather than an actual circumstance. That is not the case here. Carpenter Chartered has more than 900 matters appearing before the agency, the Veterans Court, and this court that are affected by these very rules. And it is not only the operation of Carpenter Chartered that is affected by those rules, but far more importantly, the clients that we represent and the impediments that are because these rules on their face are invalid, that they are inconsistent with the intent of Congress as expressed in the AMA and go way beyond anything that Congress intended. Well, that goes to the merits, Mr. Carpenter. We might disagree with you. Oh, I'm sorry, Your Honor. I was only trying to make that... I don't think your argument on standing is hinged on the necessity for us to find the regulations invalid. You're saying the regulations are subject to challenge under 502, and that that's enough. Yes, Your Honor. Don't need to over-argue your case. And I'm sorry, I didn't mean to. I was simply trying to offer that as an example. Let's take a specific example, however. One of your challenges is to 38 CFR 14-636, that directly involves fees. We have a previous presidential case in which you were granted standing to challenge a regulation that impaired your fees and your allegation, and there was personal harm. So I would assume that you're making an even more specific argument with regard to CFR 14-636. We are, Your Honor. And do you want to go to the merits of that, or are we still on the standing? I just wanted to distinguish that you're not making what I would call a more general argument in terms of standing there. Oh, no, Your Honor, I am not. The person that is harmed is carbon-discharged, correct? In the context of that specific regulation, and then... Yes, Your Honor. Mr. Carpenter, this is Judge Chan. Just if I could compare your challenge to this particular subsection of this regulation to what MVA was challenging in the earlier appeal as to the ability to collect fees for handling supplemental claims. Yes, Your Honor. In that particular case, they had a declarant, someone named Wells, who specifically described how he was precluded from collecting fees for a particular client supplemental claim. And so because of that, he was out several thousand dollars. And I did not see an example like that in your declaration as to how maybe you were working with a client or was about to work with a particular client, but then there was something about the operation of the regulation you're fighting against, 14.636C2C3, that precluded you from being able to perform that service and collect a fee. Am I missing something? No, you're not, Your Honor. And let me try to identify two separate bases for the adverse effect both on Carpenter Chartered as a law firm and on Carpenter Chartered as the representative of other attorneys who have been in this circumstance. The circumstance is that this rule has retained prior versions of the statute in the regulation. And as a consequence, it does not affect Carpenter Chartered as much because our fees are non-withholding fees. In other words, we don't do our fee agreements under 5904D, we do our fee agreements under 5904C. But we represent a number of other attorneys who have had their claim, their fees denied under 5904D because they did not meet the prior requirements of the statute. Is this laid out somewhere in your declaration? No, Your Honor. I'm sorry, it is not. It seemed to me that that was self-evident with the allegation that was being made. And if the court would obtain and submit such declarations, I'd be happy to do that. Any omission was a question of time and not realizing that that would have been necessary and or appropriate. Mr. Carpenter, I wanted you to note that you're into your rebuttal time right now. I was just about to make that observation, Your Honor. And even though I've not gotten a chance to get to the merits, I would like to reserve the balance of my time to respond to the government. Okay, thank you. Mr. Pihai, your turn. Good morning. May I please David Pelkey for the United States? Okay. Let's start with standing. I think that the key distinction that's already come out right away in the argument is that we are dealing with a law firm here. And one question that was asked is how does this, if we start down this path, what are we talking about in terms of application to other types of law firms? Is it enough that a firm defines itself as dealing with a narrow area of the law, represents people in that area, and now that law can become a super plaintiff to challenge rules or regulations in that area? So like if you had a firm that specialized in copyright infringement, did it then become a super plaintiff in Title 17 rulemaking, for example? And I think no. And I think that the reason why is that when you look at the Supreme Court precedents that was cited in the briefs, and you look at the way that these different forms of standing operate from constitutional through to prudential, the courts, especially the Supreme Court, express growing concern and wariness as you move down that path. And when you get to law firms, it becomes, in this case, if Carpenter is going to be a third party, I don't think it can meet the standard, certainly under associational. I don't think they're planning that. Also under organizational. But why isn't, why don't we treat a law firm as an association? Because the law firm is representing specific clients, and those clients are the ones who have the issues. And the law firm should be, can represent them if they have issues. Right. And NOVA has members who are veterans who have issues. Right? In fact, that's the only way NOVA can have standards. Oh, I, yeah, I think, yes, I think that that characterizes NOVA's situation. I'm not intimately familiar with it now. Does it make a difference, does it make a difference, Mr. Felkey, that the way I understand it, associational, organizational standing must show that they have at least one member who would otherwise have standing. And to me, the word member, I can easily associate that within an organization or association. I don't see law firms as separate members other than their partners. Right. And that's precisely the distinction I was trying to make. Excuse me. Can everybody mute their phone unless you're speaking? We're getting a lot of feedback here. Thank you. I'm sorry, Mr. Felkey, was you saying? Oh, yes. Thank you, Your Honor. I think, and that's the point that I was getting towards, and why I think third-party standing is really the issue that's probably at the center here with Gartmutter. Clients are not members, right? I mean, the wariness that's expressed in the case law for law firms proceeding as founded, it's not a path that we want to go down. It drifts further and further from Article III standing, at least in associational, organizational standing, the way they're described in the case law. At least there are members with direct harm, and that becomes a foundational element of why the organization is able to proceed. And I think that the bases here, so when you look at the declarations attached to the supplemental brief from Carpenter Chartered, it has clients that are advocating for specific harms that they think that they have. And so the standards for third-party standing are what should properly be applied here. Carpenter Chartered cannot meet direct standing either on an associational or an organizational level. And its declarations haven't really tried to. They're very general in terms of the harm to the firm. I think it was Judge Hannibal's distinction between what was in this declaration from Mr. Wells versus Carpenter Chartered. I mean, when you look at Carpenter Chartered, they're talking generally about delays, potentially for more work. Well, you start applying this to law firms, that's any time there's a change in law. The law firm might have to do a little more work or research the change, et cetera, et cetera. And for this to suddenly become the basis for law firms to start leading the charge in the court, the challenge. Well, so Mr. Pelkey, what's the difference between what's wrong with treating a law firm as an organization? You know, there is a concept based on the Supreme Court's decision in Haven's Realty 455 U.S. 363 of something called organizational standing. You're aware of that? Yes, and that's, I believe that... Okay, so being organizational, why can't a law firm have organizational standing? Because I think that here, what we, first, what we have in the case law from the Supreme Court is developing separate case law for law firms and looking at them differently because they are not organization. So read me the cases other than Kaplan and Drysdale that deal with law firm cases. Right, we discussed Kowalski at length in our brief as well. And in that, and in Kowalski, the Supreme Court talks about, you know, concerns that go hand in hand with prudential standing and looks very closely at, you know, the specific problem of law firms. And the reason why, I would add this, the reason why a law firm presents something that I think requires particular attention from courts on standing when we get into organizational versus third party is because when you think about what a law firm does, it's very easy for it to define itself in terms of, oh, we're going to do this now. Oh, no, now we only take clients doing this. It's a business that's working for clients, representing client interests, and it can change and define those how it wants and then start generating standing for itself. Whereas, you know, organizations, 501c3s, support organizations, things that have, you know, clear mission statements, histories of, you know, being involved in lobbying or direct contact with agency, not just legal representation, but other things. I mean, there are many levels and indicia that can go with that type of organization that helps. Well, you don't, you don't deny that there could be a law firm, for example, a public interest law firm that had a mission statement that said, our mission is to stop the federal government from building bridges over rivers unless we can prove that it won't harm the fish. I don't deny that. What I, what the issue is. And what you think that law firm should be treated like a general purpose law firm that has specialties? No, I think that that law firm standing should be examined under the third-party standing rules that accompanied about every other request that I've seen for law firm standing, which is, look, you have clients. You say you're representing the interests of clients. That's your purpose. Okay, why can't your clients bring these clients? And so it asks, and the law firm can proceed with standing if it shows, look, we're, we have all these clients. Uh, they have article three standing and they're hindered from pursuing their claim. So let me just pursue that for a second reading off of Kaplan and Drysdale. Kaplan and Drysdale posits that you have to have constitutional standing to show harm. And in addition, you have to meet prudential tests and they put the third-party standing into that prudential test category in that case. So are you arguing, are you arguing that Carpenter Chartered here, if I'm doing the analogy to, uh, to, to Kaplan and Drysdale, that even if Carpenter Chartered could show personal damage, article three standing, or injury to its business from these regulations, it still could, if it couldn't satisfy third-party standing, it still would fall? Uh, no. And I, I do, I think between Drysdale and Kowalski, there's, you know, whether or not the law firm has to independently have article three standing. I think if, if Carpenter Chartered has, can demonstrate standing under legion or, uh, you know, establish its injury in fact, and the other, um, it could have- Well, what, what, what do you make of Kaplan and Drysdale that says that it's actually a two-part test? Uh, Kaplan and Drysdale had to have personal standing, which they had because they could show they lost, uh, money was in the hand, if they won on the merits, and then the court went on in the footnote to deal with third-party standing, suggesting that if they, it was in essence saying if Kaplan and Drysdale didn't have third-party standing, they were going to throw them out even though they had constitutional standing. Right, and, and you see that in, in Kowalski as well, and, and, uh, it's mentioned more in passing in the early part of, of the opinion, and I think that- Well, Mark, that's why I'm asking for your help. So, I mean, you had just about, were about to say that if Carpenter standing, if Carpenter could show personal harm under legion, Friends of the Earth, then you wouldn't worry about the third-party standing? No, the third-party standing, it, it comes in, and, and that's what the Supreme Court cases, uh, talk about, is because the, the, the law firm is seeking to represent those harms, right? The harms that it's saying are happening to, uh, its clients. I think that that's, you know, one of the key distinctions in the law firm context, so that you have the law firm coming in and saying, look, we, we're, we're experiencing a harm here, and the, so you look at Supreme Court cases, and they, they check that one off, and we're, we're looking to, we, we want to represent this group of clients and their interest, because they're, uh, experiencing a harm, and they're hindered from pursuing it themselves. So, I mean, my reading of those cases is that there's, it, and it's not explained explicitly in the cases, but it's, it's because of the representational aspect of the proffered basis for standing, right? The law firm is coming in and saying, we have all these clients, uh, we're being harmed, the clients are being harmed, we want to pursue these actions on behalf of the clients, and that's why the, the court goes to, you know, that key step then becomes the hindrance step, because it's like, okay, if you're looking to go and, and advocate these issues, these harms that you say are impacting your clients, why can't they do it? Um, and, and so that becomes really the key, that's the new element, right, of law party, uh, or law firm third party standing, is you have the typical... In this case is that Carpenter Chartered has fallen on its own sword, because it's produced a large handful of people who say they can bring their claims. That's exactly right, your honor, and, and that's why, uh, you know, I opened the argument with that as a, look, I think that this, the facts here, they line up with the, we have existing Supreme Court precedent here. Uh, we don't have anything going the way for law firms that Carpenter Chartered is advocating for, and the, the key element, as I just said, the new piece is hindrance, and the declarations eliminate hindrance for the individual claimants. So the preference is always for Article III. The party is being injured, should be pursuing the case, that's the preference. Prudential standing is not a preference. It's not a preferred method. It's this way. Mr. Palke, Mr. Palke, your client, the United States government, has taken a position in the in-bank case that will be heard tomorrow. Uh, you've taken a position that the precedent that binds this panel has a standing requirement that is less rigorous than Friends of the Earth Lujan. You're, you're aware of the brief that's been filed, whether you signed it or not, the brief that's been filed in the in-bank case? Yes, and I, but I don't, I'm not sure how it impacts this analysis for Carpenter Chartered under, you know, Kowalski and, and the other cases. Well, for the personal harm, we haven't decided yet. In fact, you almost gave it away. If Carpenter Chartered could establish personal standing under Lujan Friends of the Earth, i.e. personal harm, you were about to say, well, that would be a very different case. And that, even though he might not have third-party standing. So, what I'm trying to say is, with regard, lay the, uh, third-party standing issue to one side and simply take personal standing of Carpenter Chartered, okay? What test are we, this panel, to use to decide whether Carpenter Chartered has standing? Well, I think that, so, if, if we're not talking about the, the attempt to represent the harms of clients, but Carpenter Chartered... Yeah, I took, I took third-party off the table. Right, right. Carpenter Chartered... Coming in... Let's just ask this question. Carpenter Chartered is challenging 14-3-636? Correct. Right? And, and it's saying, in essence, my challenge to 16-3-6 is no different than the challenge I brought previously in a case called Chartered Carpenter that precedentially held this court he had standing. Right? So, what I'm asking you is, Carpenter Chartered's challenge to 14-6-3-6 is different from his challenge to the others. He's alleging standing as personal harm to the firm. Right. And we conceded that's a closer case in our supplemental brief. Now, okay. So, now what I'm trying to ask you, I know you're dancing around me or I'm being unclear. Let's assume I'm being unclear. My question is, what test do we use to decide whether Carpenter Chartered has personal standing to challenge 14-6-3-6? I think you, you look to the declaration that was submitted. I don't, I'm not talking about the declaration. I'm talking about the legal test. It's the Lujan. The declaration. It's, it's articles. If he's pursuing, if Carpenter Chartered is looking for articles. Give me the case. Tell me what case we are using. Is it Friends of the Earth Lujan, or is it the DAV-2000 opinion? I think it's Friends of the Earth Lujan. Well, what are we supposed to do? You have conceded, your client has conceded in the in-bank case that DAV-2000 has a lower, more looser, more relaxed is your word, standing test than Lujan. That's how you have chosen to describe your view of DAV-2000. Correct? Correct. Correct. All right. So, I'm just asking, you know, what test are we supposed to apply? We're a panel. We're not in-bank. Right. It's, and, and I apologize. I mean, and I think we, you know, refer to that test in the briefing. It is, you know, as we're arguing in the in-bank, it's the DVA standard is what should be applied. And that Carpenter needed. The DVA standard? Right, our position in the on-bank case. No, no, you're asking for, in your in-bank case, you distinguish DVA, the 2000 opinion, from the rule of Friends of the Earth Lujan? Right, right. To, exactly. And that, you know, applying that standard, that's what should be applied to Carpenter Charter. The lower, the looser standard. Yes, I think that's the position we've taken in that case, yeah. No, that's not the position you took in the in-bank case. The in-bank case is essentially asking us to overrule, asking the in-bank courts to overrule DVA 2000, correct? Right, to put, right, in favor of Lujan, right? Right. Right. And we're a panel. All twisted around, yeah, I mean, as I started off, I think it's, as we said in the brief, the standard is the stiffer standard that flows from Lujan. Well, I don't want to pursue it further because you're obfuscating and I believe you're doing it on purpose, but there's nothing more I can say to that. Hi, this is Judge Chen. I'll take a few cracks now. What would be a fact pattern in which a law firm like Carpenter Charter could establish standing to challenge the particular regulation Carpenter's challenging here, 14.636? Can you describe what that fact pattern would look like? I think that, so applying Lujan and Laidlaw, if Carpenter Chartered, for instance, the declaration described a scenario, you know, a specific scenario that resulted in, you know, specific loss fees it could identify, that could meet the standard. I mean, the problem as presented in the case is that everything is of a much more general nature in the evidence provided. So, you basically are saying something like what Wells says in the MVA case? Right, and I think government counsel said that it's, it, and they can see that, right, it presents evidence, it presents a, it's not, she, you know, identified certain things that were lacking in it, but there isn't an attempt there to identify a specific circumstance. And then what bucket would that fall in? Would that be personal standing or associational standing or some other kind of standing? This is where I believe that in that circumstance, it moves into, that's personal standing, that's an injury to the firm, and that can happen for a law firm, right? I think that the existence of third-party standing in the case law doesn't mean that personal standing is forever foreclosed to law firms, that they couldn't identify a situation that, you know, is directly injuring, or regulation that's directly, causing direct injury. Counsel, counsel, would you, would you, are you arguing or would you argue that to the extent Carpenter Chartered has any standing in this matter, it's limited to the attorney fee provision argument? Right, and I think, you know, as we sort of alluded to in our brief, that's, the closest case here, that's, I think, really before the court. I think the rest present problems on other various standards that are more readily discernible. My last question relates to the client declarations that Mr. Carpenter has filed. And as I understand the storylines behind those client declarations, they are all stories that occur after the date the petition was filed here, the 502 petition? It looks that way when you, when it happens. Yeah, and so what I want to know is, is, are there circumstances where such, after the petition filing date, actions occur, that's still nevertheless sufficient for establishing standing? Or is it your view, is it the government's view, that the law is very, very, very rigid about this, and all of the actions have to have occurred before the date the petition was filed? I would take the more rigid view. Okay, and why is that? Well, and I think we alluded to this in the brief, that the problem, so because what we're looking at right now here in practical terms is there's dozens of pages of declarations that were filed, you know, soon before oral argument, and basically a motion to substitute in a footnote. And it just, if they are going to proceed on the basis of those, those declarations, there needs to be a new petition, and they need to take that position, establish their standing, raise their arguments, which could differ from carpenter charters once, once all, you know, the facts of the individual claim. And then the government has the opportunity to respond, to analyze the arguments, analyze the evidence, and to brief a response. The current presentation of the issue is, it's ambush. Okay, no further questions. Well, there's no, I think my time. Okay. Yes, your time is up, sir. Let's hear from Mr. Carpenter. May we have five minutes, Mr. Carpenter? Yes. Thank you, Your Honor. I think carpenter charter is in a admittedly difficult position here, if I can be candid with the court. On the one hand, I believe DAV controls the disposition of the question of standing for carpenter charter. On the other hand, this petition goes further than the petition went in the carpenter charter case that was earlier. This matter is going to be addressed more broadly in the inbound decision tomorrow. I think that the panel it should be guided with the existing precedent until such time as the inbound decision is reached. I just don't see any way for me to on behalf of carpenter charter tried to prognosticate what that outcome might be. Because obviously, the inbound court has the ability to carve out a rule different from the rule that existed when this was filed. If I could speak briefly to the question about the more rigid rule relative to the harm done. In this case, it seems to me to be quite impractical to apply that rigid rule in light of the fact that these regulations could have only have had a prospective adverse effect once they were finally published. There would not have been any harm that predated the final notice and then the brief window within which we had the file under 502 would seem to have limited that opportunity. I see that I'm out of time. I appreciate the court's attention to this Okay, Mr. Carpenter, we thank you for your time. We thank the party for the arguments.